**ISRAEL DISCOUNT BANK LTD., Plaintiff–Appellant,**

v.

**Robert M. ENTIN, et al., Defendants,**

**Alexander Halberstein and Kan Rap, Inc., Defendants–Appellees.**

**No. 88–5674.**

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1992.

Steven J. Stein, Steve M. Kayman, Steven B. Feigenbaum, Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiff-appellant.

Neil J. Berman, Broad and Cassel, Gregory A. Martin, Coffey, Aragon, Martin, Burlington & Serota, Miami, Fla., for defendants.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

COX, Circuit Judge:

Appellant Israel Discount Bank filed a complaint against appellees Alexander Halberstein and Kan Rap, Inc. (collectively referred to as "Halberstein") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, fraudulent concealment and civil conspiracy. The district court dismissed the complaint as barred by res judicata. We affirm.

## I. FACTS

To encourage the growth of small businesses owned by minorities, Congress authorized the Small Business Administration ("SBA" or "Government") to license privately owned investment corporations to finance minority owned businesses through loans and equity investments. In 1978, Robert Entin formed Miami Capital Corporation ("Miami Capital") intending it to become a minority enterprise small business investment company ("MESBIC"). Gary Sack was Entin's attorney, and upon formation of Miami Capital, Sack became a director of the corporation as well as its counsel. Richard Gilliam was employed as a consultant to aid in the application process.

The main advantage of becoming a MESBIC was the opportunity to receive $500,-000 in matching funds from the SBA. In 1978, a company wanting to be licensed a MESBIC needed to have a minimum private capitalization of $150,000. Borrowed

or restricted funds were not considered private capital. One purpose of the minimum capitalization requirement was to ensure that the company properly managed the SBA's funds.

The application for a MESBIC license requires the bank holding a company's unencumbered funds to submit a letter to the SBA verifying this fact. In order to make it appear that Miami Capital was sufficiently capitalized, Entin entered into a joint venture with Alexander Halberstein on September 7, 1978. The Joint Venture Agreement ("Agreement") provided that Halberstein would deposit $500,000 into Miami Capital's account at Israel Discount Bank ("IDB"). The account and its funds, however, remained in the sole control of Halberstein.[1]

After $500,000 was deposited in "Miami Capital's account" at IDB, Entin instructed IDB to send a letter to the SBA Investment Division on September 21, 1978, to verify that IDB had on deposit "without liens, encumbrances or restrictions of any kind, the sum of $500,000.00 in the name of Miami Capital." IDB sent the letter as instructed. On October 6, 1978, the SBA approved Miami Capital's application to become a MESBIC. Miami Capital applied for SBA funding on October 13, 1978. On November 22, 1978, it received SBA funding in the amount of $500,000.

## II. PROCEDURAL HISTORY

The Government filed a civil action against Entin, Sack, Gilliam and IDB charging them with knowingly filing a false statement with the SBA for the purpose of obtaining SBA matching funds.[2] Specifically, the Government contended that IDB submitted a false and misleading letter to the SBA stating that Miami Capital had the sum of $500,000 on deposit without liens, encumbrances or restrictions. The Government obtained a judgment for violations of the False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA") against Entin, Sack, Gilliam and IDB, jointly and severally, for approximately $1.5 million.[3] *United States v. Entin*, 750 F.Supp. 512 (S.D.Fla.1990).

In that action, IDB filed a third-party complaint seeking indemnification and contribution against Entin, Sack, Halberstein and Kan Rap, Inc. Arguing that its fault was merely passive, IDB attempted to pass on any liability owed to the Government by claiming that Halberstein's fraud was active and primary. It was IDB's position that if the Government suffered any harm due to IDB's misleading letter, it was brought about by Halberstein's concealment of the Agreement from both the SBA and IDB.[4] It was the concealment from both IDB and the SBA, IDB argued, that warranted indemnification. Brief for Appellant at 6.

The district court dismissed the third-party complaint holding that under no circumstances was an indemnity or contribution claim authorized under the FCA. *United States v. Entin*, No. 84–2422

---

1. The Joint Venture Agreement provided:
KAN RAP, INC. will immediately place the sum of $500,000 in Certificates of Deposit at the Israel Discount Bank in New York City, New York, said certificates to be in the name of MIAMI CAPITAL CORPORATION. Said certificates shall be subject to the sole control of the officers of KAN RAP, INC., which officers shall at all times be either ALEXANDER HALBERSTEIN, ELSIE HALBERSTEIN or CLARA HALBERSTEIN.
Article VI of the Joint Venture Agreement.

2. Entin, Sack and Gilliam were also charged with conspiracy to defraud in violation of the False Claims Act.

3. IDB appealed this judgment, but later entered into a settlement agreement with the Government on September 11, 1991, which required IDB to tender $860,000 to the Government. Pursuant to the settlement and on the joint motion of IDB and the Government, this court dismissed the appeal and ordered the district court to vacate its judgment and dismiss with prejudice the Government's complaint as against IDB.

4. The Government "has alleged that IDB knowingly presented false and fraudulent documents for the purpose of obtaining payment or approval from the plaintiff.... [Any liability owed to the Government] will be a consequence of the fraudulent activities of the third party defendants and their agents perpetrated on *both the plaintiff [the SBA] and IDB*." Third–Party Complaint ¶ 12 (emphasis added).

(S.D.Fla. Mar. 4, 1986) (order granting third-party defendants' motion for judgment on the pleadings). This decision was not appealed.

After the dismissal, IDB sued the same defendants in a new action alleging RICO violations, fraudulent concealment and conspiracy to defraud. IDB alleged that Halberstein knowingly made IDB a party to a fraud on the SBA.[5] The principal thrust of this complaint, in IDB's words, was that "Halberstein knew his involvement in Miami Capital was not disclosed to the SBA and did not disclose it to IDB; knew that the nondisclosure was wrongful; ... and knew that IDB's letter to the SBA ... helped perpetrate his fraud on the SBA." Brief for Appellant at 8 (citations omitted).

In this subsequent suit, a different judge concluded that the causes of action in the prior third-party complaint and the present complaint were identical for res judicata purposes "because they stemm[ed] from the same 'operative nucleus of fact.' " *Israel Discount Bank v. Entin*, No. 86–0243 (S.D.Fla. Dec. 15, 1987). Finding that IDB could have asserted its present claims in the former action, the court dismissed IDB's complaint as to defendants Halberstein and Kan Rap, Inc. on the basis of res judicata. This appeal followed.

### III. DISCUSSION

IDB maintains that the district court erred in dismissing its complaint on the basis of res judicata. Its new claims, IDB contends, are different from those previously alleged in its third-party complaint. IDB argues that its present action is based

on Halberstein's fraud perpetrated on IDB in contrast to the prior indemnity suit which was based on Halberstein's fraud perpetrated on the SBA. IDB concludes that res judicata cannot bar its present action because these new claims do not arise from the same nucleus of operative fact.

Halberstein, on the other hand, agrees with the district court that both IDB's present claims and past claims arise from the same nucleus of operative fact. He argues that the district court correctly barred IDB's present action on the basis of res judicata.

■ Barring a claim on the basis of res judicata is a determination of law. Therefore, the standard of review for this court is de novo. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1548 n. 1 (11th Cir.) *cert. denied,* —— U.S. ——, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). Res judicata bars relitigation of all matters decided in a prior proceeding. Specifically, it will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same. *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990); *In re Justice Oaks II, Ltd.*, 898 F.2d at 1550.

IDB does not dispute that the first three prongs of the test have been satisfied. *Israel Discount Bank v. Entin*, No. 86–0243 (S.D.Fla. Dec. 15, 1987). The only issue then is whether the prior and present causes of action are the same.[6] The dis-

---

**5.** IDB alleged that it "did not know and had no reason to suspect that the defendants were engaged in a scheme to defraud the Government, or that Halberstein's involvement in MCC's capitalization and operation had not been disclosed to the SBA or that the $500,000 in MCC's name was not available for MCC's use." Complaint ¶ 25. "Halberstein ... induc[ed] IDB to unwittingly act in furtherance of their scheme to defraud the Government, fraudulently concealed from IDB (i) their unlawful purpose, (ii) their failure to disclose Halberstein's role in MCC to the SBA, and (iii) the fact that the $500,000 on deposit in MCC's name was not available for MCC's use." Complaint ¶ 47.

**6.** IDB also contends that these new claims could not have been asserted in the prior action because the only available means to bring in Halberstein as a party would have been Fed. R.Civ.P. 14(a). Rule 14(a) only allows third-party plaintiffs to implead a third person if the claims are derivative of the plaintiff's claim. IDB maintains that its present claims are not derivative of the Government's claims in the prior action. If the claims are not derivative, then Rule 14(a) would have been unavailable to IDB, and it would follow that res judicata cannot now bar its present action. We find the argument meritless.

trict court concluded that they were the same for purposes of res judicata. We agree.

■ In general, cases involve the same cause of action for purposes of res judicata if the present case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action." *Citibank*, 904 F.2d at 1503 (citation omitted). Put another way, they must "arise out of the same transaction or series of transactions." *In re Justice Oaks II, Ltd.*, 898 F.2d at 1551.

· In this analysis, a court should compare the factual issues explored in the first action with the factual issues to be resolved in the second action. *Citibank*, 904 F.2d at 1503. "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541 at 1549 (11th Cir.1986).

■ In both actions, IDB alleged that: (1) Halberstein concealed the Agreement;[7]

(2) IDB sent a misleading letter to the SBA unaware of that Agreement; (3) the SBA suffered damages on account of the misleading letter; (4) the SBA sued IDB to recover those damages; and (5) Halberstein is responsible for all of IDB's liability and costs associated with the SBA suit. IDB's present case arises out of the same nucleus of operative fact as its prior indemnity suit.

Finding that both actions arise from the same nucleus of operative fact, we hold that the causes of action are the same for purposes of res judicata.[8] Because the four elements of res judicata have been satisfied, we affirm the district court's order dismissing IDB's complaint.[9]

AFFIRMED.

---

The substance of the present action is identical to the substance of IDB's prior action, namely, indemnification. IDB maintains that its present claims do not seek indemnification for the liability and costs associated with the FCA action. A quick glance at IDB's Complaint reveals otherwise. IDB seeks damages for any liability incurred in, and all costs associated with, the prior FCA action. Complaint ¶¶ 39, 52, 57. IDB seeks redress, therefore, only for the liability and costs arising from the fraud perpetrated by IDB and Halberstein on the SBA. Thus, if IDB should prevail in the present action, Halberstein would, for all intents and purposes, be indemnifying IDB for the fraud IDB committed on the SBA. *See Mortgages, Inc. v. United States Dist. Ct. for the Dist. of Nev.*, 934 F.2d 209, 214 (9th Cir.1991) (holding that if there is no right to indemnity or contribution in a FCA action, then there can be no right to assert fraud based claims that, if prevailed upon, would result in the same outcome).

Because IDB's present action seeks indemnification for the liability incurred in the prior suit brought by the Government, we find that IDB would have been able to avail itself of Rule 14(a).

7. IDB alleged in both actions that it was Halberstein's act of concealing the Agreement which led IDB to incur liability. In the prior suit, IDB characterized Halberstein's act of concealment as active fraud to support their indemnity claim. Contrary to IDB's allegations, IDB's indemnity

suit would have focused on Halberstein's fraudulent activities vis-a-vis IDB as well as the Government. *See supra* note 4. In the present action, IDB's claims are similarly bottomed on Halberstein's failure to disclose the Agreement to both the SBA and IDB. *See supra* note 5.

8. This should come as no surprise to IDB. In its Complaint, IDB acknowledges that the present action "arises from the same facts and circumstances that gave rise to the case of *United States v. Entin.*" Complaint ¶ 8. Although IDB was referring to the main suit between the Government and the Defendants, IDB's indemnity claim in that case, which is the focus in this action, necessarily arises out of the same facts and circumstances of the main suit, it being a derivative claim.

9. Arguably, the present action could also have been dismissed because there is no right to indemnity or contribution under the FCA. *United States v. Entin*, No. 84-2422 (S.D.Fla. Mar. 4, 1986); *see also Mortgages, Inc. v. United States Dist. Ct. for the Dist. of Nev.*, 934 F.2d 209 (9th Cir.1991) (a FCA defendant is precluded from seeking indemnification as a matter of law); *United States v. Nardone*, 782 F.Supp. 996 (M.D.Pa.1990) (same); *United States v. Hero*, 78 Civ. 4587, 1981 WL 1982 (S.D.N.Y. July 27, 1981) (same); *United States v. Kennedy*, 431 F.Supp. 877 (C.D.Cal.1977) (same). IDB's present claims are nothing more than a poorly

disguised attempt to evade the holding of *United States v. Entin.* *See supra* note 6. The district court did not reach this issue, however, so we do not reach it.