[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15264

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2010
JOHN LEY
CLERK

D. C. Docket Nos. 02-20080-CV-FAM,
00-01334-MD-FAM

MD EDGAR BORRERO,
on behalf of himself and all others
similarly situated,
MD MALCOLM GOTTESMAN,
on behalf of himself and all others
similarly situated,

Plaintiffs-Appellants,

versus

UNITED HEALTHCARE OF NEW YORK, INC.,
UNITED HEALTHGROUP, INC.,

Defendants-Appellees.

_____

No. 08-15265

_____

D.C. Docket Nos. 01-04730-CV-FAM,
00-01334-MD-FAM

M.D. KAREN LAUGEL,

Plaintiff-Appellant,

versus

UNITED HEALTHCARE INSURANCE COMPANY,
UNITED HEALTHGROUP, INC.,

Defendants-Appellees.

_____

No. 08-15267

_____

D.C. Docket Nos. 02-22486-CV-FAM,
00-01334-MD-FAM

TENNESSEE MEDICAL ASSOCIATION,

Plaintiff-Appellant,

versus

UNITED HEALTHGROUP, INC.,
UNITED HEALTHCARE OF TENNESSEE, INC.,

Defendants-Appellees.

_____

No. 08-15271

_____

D.C. Docket Nos. 02-20079-CV-FAM,
00-01334-MD-FAM

MEDICAL SOCIETY OF THE STATE OF NEW YORK,

2

                                        Plaintiff-Appellant,

                            versus

UNITED HEALTHCARE OF NEW YORK, INC.,
UNITED HEALTHGROUP, INC.,

                                        Defendants-Appellees.

                    _____

                          No. 08-15273

                    _____

              D.C. Docket Nos. 04-22165-CV-FAM,
                      00-01334-MD-FAM

NORTH CAROLINA MEDICAL SOCIETY,

                                        Plaintiff-Appellant,

                            versus

UNITED HEALTHGROUP INCORPORATED,
UNITED HEALTHCARE OF NORTH CAROLINA,
MAMSI LIFE AND HEALTH INSURANCE COMPANY,

                                        Defendants-Appellees.

                    _____

                          No. 08-15274

                    _____

              D.C. Docket Nos. 02-22487-CV-FAM,
                      00-01334-MD-FAM

MD ZACHERY ROSENBERG,

                              3

on behalf of himself and all others
similarly situated,

                                          Plaintiff-Appellant,


                          versus


UNITED HEALTHGROUP, INC.,
UNITED HEALTHCARE OF TENNESSEE, INC.,


                                          Defendants-Appellees.


                    _____


                        No. 08-15275

                    _____


              D.C. Docket Nos. 01-04731-CV-FAM,
                       00-01334-MD-FAM


CONNECTICUT STATE MEDICAL SOCIETY,
                                          Plaintiff-Appellant,


                          versus


UNITED HEALTHCARE INSURANCE COMPANY,
UNITED HEALTHGROUP, INC.,


                                          Defendants-Appellees.


                    _____


          Appeals from the United States District Court
                for the Southern District of Florida
                    _____
                        (July 6, 2010)

Before DUBINA, Chief Judge, KRAVITCH, Circuit Judge, and ALBRITTON,[*] District Judge.

DUBINA, Chief Judge:

In this consolidated appeal, three physicians and four representative organizations ("Appellants") appeal the district court order dismissing their complaints against United HealthCare and its related entities ("United"). The district court held that the Appellants' contract-based claims were precluded by the judgment in a class action suit based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (2006) ("RICO"), asserted by physicians against United and other health insurance entities. Appellants dispute both the district court's subject matter jurisdiction and its substantive decision regarding the claim preclusive effect of the RICO class action judgment. We hold that the district court properly exercised subject matter jurisdiction over all of the claims presented, but reverse its order dismissing those claims based on res judicata.

## I. BACKGROUND

Appellants independently brought seven cases against United in various state courts during the years 2001 and 2002. Appellants, who are healthcare providers

---

[*]Honorable William H. Albritton, III, United States District Judge for the Middle District of Alabama, sitting by designation.

or their representative associations, allege that United breached its contracts with them (often called provider or subscriber agreements) by not paying them the full contracted rate for services rendered to United's insureds, in violation of common and statutory law. United removed all of the cases to federal court, asserting the court's federal question jurisdiction over matters covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a) (2006). At the time the cases were filed, another case was pending in the Southern District of Florida that alleged breaches of contract by various health insurers and a nationwide conspiracy among health insurers, including United, to delay and reduce payment to healthcare providers in violation of various subscriber agreements. *See In re Managed Care Litig.*, 430 F. Supp. 2d 1336 (S.D. Fla. 2006) ("*Shane*"), *aff'd sub nom. Shane v. Humana, Inc.*, 228 F. App'x 927 (11th Cir. 2007) (unpublished).

The Joint Judicial Panel on Multidistrict Litigation transferred each of the cases covered by this consolidated appeal to the Southern District of Florida after its removal. There, the cases remained on the "tag-along" docket of the court and were stayed until the disposition of the *Shane* litigation, despite Appellants' efforts to remand the cases to state court. After the court entered judgment in the *Shane* litigation, United moved to dismiss all of the cases underlying this appeal based

6

upon the preclusive effect of *Shane*. Appellants opposed the motions and argued that remand would be the proper disposition because the court lacked subject matter jurisdiction over their claims. The court held in favor of United and ordered dismissal of all Appellants' complaints.

The *Shane* litigation has its own complex procedural history that is exceedingly relevant to the outcome of the present action. In *Shane*, a group of plaintiffs, initially not including the Appellants, asserted breach of contract and RICO conspiracy claims against a number of health insurers, including United. The plaintiffs in *Shane* included healthcare providers both with and without contracts with the insurers.

An order compelling arbitration of all contract-based claims between insurers and providers who had an existing contractual relationship, based on the terms of the subscriber agreements, marked the first major procedural step in the *Shane* litigation. *In re Managed Care Litig.*, 132 F. Supp. 2d 989 (S.D. Fla. 2000), *modified*, 143 F. Supp. 2d 1371 (S.D. Fla. 2001). This order did not apply to the Appellants in this case because the plaintiffs in *Shane* had not yet sought class certification. Left remaining in the case were the payment claims asserted by providers who had no contractual relationship with the insurers, as well as the RICO claims asserted by all of the providers.

7

The plaintiffs in the *Shane* action next sought class certification for both the remaining payment claims on behalf of the non-participating providers and for the RICO claims asserted by all of the providers. The district court certified both classes, but this court held that only the RICO claims were appropriate for class certification. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1261 (11th Cir. 2004). In response, the *Shane* plaintiffs amended their complaint to include only the class action RICO claims, on which the district court granted summary judgment in *Shane,* 430 F. Supp. 2d 1336. There, the district court granted summary judgment in favor of United and held that the class of physicians had failed to produce sufficient evidence that a conspiracy existed amongst the insurers to underpay and otherwise defraud the physicians. *Id.* at 1357. Following the disposition in *Shane*, the district court dismissed the underlying cases at issue here, leading to the instant appeal.

## II. STANDARD OF REVIEW

We review a district court's preemption analysis *de novo*. *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003). We also review *de novo* a dismissal order based on res judicata. *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006).

## III. DISCUSSION

8

We confront two primary issues in this appeal: whether the claims of the individual and associational Appellants are completely preempted by ERISA § 502(a), 29 U.S.C. § 1132(a), and thus subject to federal question jurisdiction, and whether the claims pursued by the Appellants are sufficiently related to those resolved in the *Shane* litigation so as to preclude their assertion here. We conclude that Appellants' claims are completely preempted by ERISA and thus are subject to federal jurisdiction. Those claims are not, however, subject to claim preclusion because they arise from a nucleus of operative fact distinct from those resolved in the *Shane* litigation.

### A. ERISA Preemption

Section 502(a) of ERISA creates a civil cause of action for participants and beneficiaries of ERISA plans to recover benefits or enforce rights under an ERISA plan. 29 U.S.C. § 1132(a). This section definitively "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 2496 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S. Ct. 1542, 1547 (1987)). United contends that Appellants' ostensible state law claims are preempted by ERISA because the claims seek enforcement of rights under ERISA plans.

9

The Supreme Court set out a two-part test for complete preemption under ERISA's remedies provision in *Davila*. A state law claim is completely preempted by ERISA, and therefore removable to federal court, if two conditions are met: the claimant must have been able to, at some point in time, bring his claim under ERISA § 502(a)(1)(B), and there must be "no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210, 124 S. Ct. at 2496. We adopted this framework for ERISA preemption analysis in *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1345 (11th Cir. 2009).

1. *Whether Appellants Could Have Brought Their Claims Under ERISA*

The first question posed by *Davila* in assessing complete preemption is whether "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496. Under ERISA § 502(a)(1)(B), claims pursuant to ERISA benefit plans may be brought "by a participant or beneficiary." 29 U.S.C. § 1132(a)(1). In *Davila*, it was clear that the plaintiffs, themselves participants in and beneficiaries under ERISA plans, were appropriate parties to enforce rights under the statute. By contrast, "[h]ealthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA" and thus lack standing to sue under the statute. *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001).

10

Healthcare providers may have standing under ERISA only when they derivatively assert rights of their patients as beneficiaries of an ERISA plan. *Id.* To sue derivatively, the provider must have obtained a written assignment of claims from a patient with standing to sue under ERISA. *Id.* In *Hobbs*, we determined that a healthcare provider had no standing to sue when there was no evidence that it received any assignments from its eligible patients. *Id.* at 1241–42. As a result, we concluded that there was no complete preemption of the provider's claims because there was no evidence of derivative standing. *Id.* at 1242–43.

In *Connecticut State Dental*, we addressed the ERISA preemption issue in a case related to those on appeal here.[1] Two dentists and their representative organization sued a health plan administrator for damages relating to the payment contracts between the parties. The dentists claimed that the administrator wrongfully paid them below their contracted rates and refused to make payment on claims for "medically necessary" services. This court held that the dentists' claims were completely preempted by ERISA's remedies provision, and that the court therefore had subject matter jurisdiction over the claims. *Connecticut State Dental*, 591 F.3d at 1350–53.

---

[1] *Connecticut State Dental* was also a case on the tag-along docket of the *Shane* litigation. 591 F.3d at 1342.

11

In *Connecticut State Dental*, we discussed two types of claims that can be made by providers against insurers: those challenging the "rate of payment" pursuant to the provider-insurer agreement, and those challenging the "right to payment" under the terms of an ERISA beneficiary's plan. *Id.* at 1349–50; *see also Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 530 (5th Cir. 2009); *Pasack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402–03 (3d Cir. 2004). We indicated that a "rate of payment" challenge does not necessarily implicate an ERISA plan, but a challenge to the "right to payment" under an ERISA plan does. *Connecticut State Dental*, 591 F.3d at 1350–51. We then examined the dentists' complaint and concluded that it challenged both the rate of payment and the right to payment under the ERISA plan because it alleged that the administrator both paid them the wrong rate and denied payment altogether for "medically necessary" services, a coverage determination defined by the beneficiary's ERISA plan. *Id.*

We next concluded that the complaint presented a "hybrid claim," some of which was within ERISA and some of which was not. *Id.* at 1351. Therefore, to resolve the first prong of the *Davila* test, we evaluated whether the dentists had standing to assert their beneficiaries' claims. *Id.* Noting that the dentists had in the past submitted claim forms that authorized benefit payments to go to the dentists

12

on the beneficiary's behalf, we concluded "that these claim forms suffice to show an assignment of benefits by" the dentists' patients. *Id.* at 1351; *see also Hobbs*, 276 F.3d at 1241 (requiring assignment of benefits for complete preemption under ERISA). We reasoned that "[o]ur own cases confirm that assignment of the right to payment is enough to create standing." *Connecticut State Dental*, 591 F.3d at 1352.

In this case, the only remaining question is whether the Appellants, at any time, asserted claims on behalf of ERISA beneficiaries. United presented evidence of such assignments to the district court. Appellants make two principal arguments in an attempt to distinguish their cases from *Connecticut State Dental*. First, they contend that their complaints expressly disclaim causes of action under ERISA, unlike those in *Connecticut State Dental*. Second, they contend that the claim forms exhibiting assignments were "representative" and "typical" of assignments in *Connecticut State Dental*, but the assignment forms presented in this case are anomalous and thus could not confer standing upon them.

Both attempted distinctions are unavailing. We emphasize that the first *Davila* prong is satisfied by a two-part showing: "(1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Connecticut State Dental*, 591 F.3d at 1350. The Appellants' first

contention attempts to undermine their own standing to sue here. In the midst of disclaiming the assignments of benefits, Appellants' complaints contend generally that "this action does not otherwise seek benefits or other remedies under [ERISA.]" But our above analysis indicates that the factual allegations raise precisely the type of ERISA determinations that trigger complete preemption and convert the otherwise state law claims into federal claims.

We must then resolve the inherent conflict in a factually pled but simultaneously disclaimed cause of action. Appellants' attempt to characterize their claims as eluding the scope of ERISA itself presents a legal rather than factual conclusion. It is our function, however, to draw legal conclusions from the facts pled. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

We acknowledge that "the plaintiff is the master of the complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99, 107 S. Ct. 2425, 2433 (1987). But when the plaintiff chooses to plead a cause of action completely preempted by federal law, the plaintiff is not always master of the forum. In *Caterpillar*, the plaintiffs had at their disposal a set of contracts covered by a collective bargaining agreement and a set of individual employment contracts governed only by state

14

law. The plaintiffs sued only on the individual contracts. The defendant removed their claims to federal court, arguing that the claims were founded on the collective bargaining agreements and were governed exclusively by federal law. *Id.* at 394, 107 S. Ct. at 2430.

The Supreme Court held that removal was impermissible. *Id.* at 399, 107 S. Ct. at 2433. The Supreme Court recognized that the state law claims were distinct from any potential claims related to the collective bargaining agreements, and reasoned that "respondents' complaint is not substantially dependent upon interpretation of the collective-bargaining agreement." *Id.* at 395, 107 S. Ct. at 2431. *Caterpillar* demonstrates that plaintiffs may choose to exclusively pursue their state law claims in state court, even against the backdrop of another set of potentially preempted claims.

Appellants here have not pursued exclusively state law claims, but instead have cast their pleadings in a way that implicates federal law as well. Their claims are "substantially dependent upon interpretation" of ERISA plans. Ultimately, we ask whether the physicians and their associations "*could* have brought his claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496 (emphasis added). Our precedent reveals this to be true here. *See Connecticut State Dental*, 591 F.3d at 1350–53.

Second, nothing in *Connecticut State Dental* indicates that the assignment of benefits forms submitted to the court must be "typical" of those regularly submitted by the providers in order to confer standing. The result in *Connecticut State Dental* turned on whether the doctors had standing to pursue any claim asserted against the insurer, not whether the doctors had standing to pursue their average or "typical" claims against the insurer. Here, all of the individual Appellants at one time received assignments of benefits from their patients. Because their complaints contest the global practices of United and do not identify any specific patient, we must assume that the providers are asserting at least some derivative claims.

2. *Whether the Conduct Implicates a Legal Duty Independent of ERISA*

The test in *Davila* is conjunctive—both conditions must be satisfied for a claim to be completely preempted. After United has demonstrated that Appellants' claims could have been brought under ERISA, it next must show that the claims asserted did not implicate legal duties independent of those imposed by ERISA or an ERISA plan's terms. *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496. Because the Appellants pled claims based on coverage determinations under ERISA plans in addition to claims based on their provider contracts, the legal duty implicated is dependent upon an ERISA plan. As both *Davila* factors are met, the coverage

16

claims are completely preempted. This gives a federal court federal question jurisdiction over those claims and supplemental jurisdiction over the remaining claims.

In *Connecticut State Dental*, we concluded that certain claims in the dentists' complaints were not predicated on a legal duty independent of ERISA. *Connecticut State Dental*, 591 F.3d at 1353. We reasoned that claims involving only the amount owed based on the rate of payment might not implicate ERISA, but the claims that challenged coverage determinations under ERISA plans clearly implicated ERISA. *Id.* We held that subject matter jurisdiction existed over all of the claims in the complaint because jurisdiction existed over the completely preempted claims and those joined with them. *Id.*

Appellants contend that their state law claims, based predominantly on their contracts with United, implicate legal duties independent of ERISA because state law, not ERISA, defines the contractual obligations of the parties. Though this is true in the abstract, the Supreme Court has indicated that we must evaluate each claim by its actual content. *See Davila*, 542 U.S. at 212–213, 124 S. Ct. at 2497–98 (concluding that Texas law imposing standard of care on managed care entities did not impose a duty independent of ERISA because "interpretation of the terms of [ERISA] benefit plans forms an essential part of [the state law] claim").

17

Here, the content of the claims necessarily requires the court to inquire into aspects of the ERISA plans because of the invocation of terms defined under the plans.

Consistent with *Connecticut State Dental*, at least some of the claims pursued by the Appellants implicate legal duties dependent on the interpretation of an ERISA plan. These claims—about wrongfully denied benefits based on determinations of medical necessity—relate directly to the coverage afforded by the ERISA plans. Many of the other allegations in the complaint, for practices like downcoding and bundling, are based on independent provider-insurer contracts and do not implicate ERISA. But, because at least some of the allegations are dependent on ERISA, those claims are completely preempted and federal question jurisdiction exists. Because Appellants' claims are completely preempted by ERISA, a federal court has subject matter jurisdiction over Appellants' suit.

3. *Associational Standing*

The representative associations argue that the district court lacked federal jurisdiction over their claims, even if the claims of the individual Appellants were completely preempted by ERISA. At oral argument, the medical associations argued that under our recent decision in *Connecticut State Dental*, they lack standing to pursue their claims in federal court, and their claims therefore cannot

18

be completely preempted by ERISA.[2]  In *Connecticut State Dental*, we held that the associational plaintiff lacked standing to sue in a representative capacity because it sought damages on behalf of its individual members.  *Connecticut State Dental*, 591 F.3d at 1353–54.  Because the associational Appellants in this case seek only equitable relief, they have standing to assert claims under ERISA.

The Supreme Court has established a three-prong test by which we evaluate associational standing:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977).  "It has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing."  *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999).  The medical

---

[2]  In their briefs to this court, filed before we released our decision in *Connecticut State Dental*, Appellants argued that the medical associations qualified for associational standing.

associations admit in their complaints that they seek to vindicate the rights of the associations and their members. They admit that the purposes of the associations encompass ensuring appropriate service-payment transactions between providers and insurers.

Other circuits have expressly permitted representative entities to sue under ERISA through associational standing. *See S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919, 922 (7th Cir. 2003); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 284–87 (3d Cir. 2002); *Self-Ins. Inst. of Am., Inc. v. Korioth*, 993 F.2d 479, 484–85 (5th Cir. 1993). In *Connecticut State Dental*, we held that a medical association lacked standing to sue under ERISA because it sought both equitable and legal relief. 591 F.3d at 1354. We noted that the adjudication of claims for money damages would require the kinds of "individualized proof" that run afoul of the third prong for associational standing enunciated in *Hunt*. *Id.*; *see also Warth v. Seldin*, 422 U.S. 490, 515–16, 95 S. Ct. 2197, 2214 (1975).

We hold that the claims for injunctive and declaratory relief made by the medical associations are completely preempted. That the associations' members have standing to sue in their own right is unquestioned and is indicated by their individual presence in this consolidated appeal. The allegations within the

associations' complaints demonstrate the nexus between their organizational purposes and the objects of their claims. The only remaining question is whether their claims would require excessive participation by individual members. It is a question we answered affirmatively in *Connecticut State Dental* because of the presence of claims for money damages. 591 F.3d at 1354.

In this case, the medical associations seek only declaratory and injunctive relief. In *Pennsylvania Psychiatric Society*, the Third Circuit focused its attention on the content of the society's challenges in determining whether excessive individual participation would be required, and would thus thwart associational standing. Because the society challenged the methods of the managed care organizations, and not specific decisions made by the organizations, its case could be proved by sample testimony. 280 F.3d at 286. The court believed it possible that the society could establish its claims with limited individual participation, and therefore held that associational standing existed, reversing the district court's order that dismissed the complaint. *Id.* at 286–87.

A review of the medical associations' complaints in this case shows that their claims, too, can be litigated with limited individual participation. The medical associations challenge United's practices—improper coding, bundling, downcoding, edits, improper use of guidelines, and poor claims resolution. The

21

relief they seek is an alteration of United's methodology, not redress for any specific past decision. Because these claims can be proved with the limited participation of organization members, the organization has standing to assert them here.[3] And, just as the individual physicians' claims implicate ERISA plans, the claims of the medical associations are completely preempted by ERISA and are properly subject to the jurisdiction of a federal court.

**B. Res Judicata**

Appellants next contest the district court's conclusion that their claims are precluded by the judgment in the prior *Shane* litigation. In this circuit, a claim is precluded by the judgment in a prior case when (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the judgment was final and on the merits; (3) both cases involve the same parties or those in privity with them; and (4) "both cases . . . involve the same causes of action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). Appellants first contend that the court rendering the *Shane* judgment was not "of competent jurisdiction" because it could not have heard their arbitrable claims. Second, Appellants contend that the current case is not the same cause of action as the first because it depends on

---

[3] We note, as the Third Circuit did in *Pennsylvania Psychiatric Society*, 280 F.3d at 286–87, that should the actual litigation of the medical associations' claims involve excessive individual participation, the district court retains discretion to consider the associations' standing at that later time. But, at the pleadings stage, we think dismissal is premature.

22

contract-based claims and does not depend on the existence of a conspiracy. Because we conclude, as discussed below, that the conspiracy and contract claims derive from sufficiently distinct factual sets, we hold that the Appellants' claims in this case are not barred by claim preclusion.

1. *Court of Competent Jurisdiction*

"It is well-established that the general rule against splitting causes of action does not apply when suit is brought in a court that does not have jurisdiction over all of a plaintiff's claims." *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1392 (11th Cir. 1996). Appellants contend that the court in *Shane* lacked jurisdiction over their state law claims because they had to arbitrate those claims pursuant to their contracts with United, and therefore claim preclusion does not apply here. United argues that the arbitrability of a claim does not mean that a federal court lacks jurisdiction over that claim.

Most courts considering the issue have concluded that the arbitrability of a claim is not a jurisdictional limitation. *See, e.g.*, *Gabbanelli Accordions & Imps., L.L.C. v. Gabbanelli*, 575 F.3d 693, 695 (7th Cir. 2009) (noting that an agreement to arbitrate "no more deprives the court of jurisdiction than a defense based on any other contractual forum-selection clause would"); *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 56 (1st Cir. 2007) ("An agreement to arbitrate does not divest

a court of its jurisdiction."). In *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, this court considered factual circumstances similar to those presented here and held contrary to the Appellants' position. 985 F.2d 1067 (11th Cir. 1993), *abrogated on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S. Ct. 588 (2002).

In *Kelly*, the plaintiff declined to present state law claims to the federal court in the prior action because of the applicability of an arbitration agreement. We held that the plaintiff should have presented them despite the agreement, and that the agreement to arbitrate would not limit the applicability of claim preclusion. *Id.* at 1070. "Plaintiffs could have asserted the state claims before the district court, which would have had pendent or diversity jurisdiction over the claims. The uncertainty of whether defendant would move to compel arbitration of the state claims did not justify two proceedings." *Id.*

In this case, Appellants' uncertainty about whether United would move to compel arbitration did not relieve them of the obligation to assert all of their claims in the prior action. The arbitrability of claims is not jurisdictional, and the district court in the *Shane* litigation would have been competent to hear those claims even though it might have ordered them to arbitration. We reject Appellants' argument that they were unable to present their claims to the district court because they were

the subject of an arbitration agreement.

2. *Same Cause of Action*

We next turn to considering whether the two cases comprise the same cause of action. The doctrine of claim preclusion serves several important policy functions, and the analysis we undertake to measure the identity of claims promotes these ends. One of the chief concerns of res judicata is the prevention of inconsistent results. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4403 (2d ed. 2002) ("The most purely public purpose served by res judicata lies in preserving the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results."); *see also Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1240 (11th Cir. 1999) (noting that permitting the severance of related claims would allow "a second bite at the apple"). In addition, "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 415 (1980). Ultimately, courts applying res judicata seek "to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the

plaintiff in the vindication of a just claim." Restatement (Second) of Judgments § 24 cmt. b (1982).

In consideration of these goals, our circuit has used a variety of labels to describe the methods by which we judge the similarity of two causes of action. *Compare NAACP v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990) (noting that the "principle test" for comparing cases involves inquiry into the primary rights and duties implicated) *with In re Atlanta Retail, Inc.*, 456 F.3d 1277, 1288 (11th Cir. 2006) (examining whether cases involve "the same nucleus of operative fact") *and In re Piper Aircraft*, 244 F.3d at 1296–97 (noting that claims are the same "when they arise out of the same transaction or series of transactions"). Nothing in our jurisprudence suggests that any meaningful analytical difference derives from the label we affix to the method of comparison. *See e.g.*, *Ragsdale*, 193 F.3d at 1239 & n.8 (concurrently reciting all three of the above labels in describing our comparative approach).

Our sister circuits have been generally more disciplined in their comparative approaches, and a number have explicitly adopted the transactional approach taken by the Second Restatement of Judgments. *See* Restatement (Second) of Judgments § 24(1) (1982) ("[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or

26

series of connected transactions, out of which the action arose.").[4] We have occasionally expressed our approval of the Restatement formulation, though we have never formally adopted it as an exclusive comparative framework. *See, e.g.*, *Ragsdale*, 193 F.3d at 1239 n.8 (quoting the Restatement provision and its commentary); *Isr. Disc. Bank Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir. 1992) (indicating that the transactional comparison is equivalent to the examination of the "nucleus of operative fact").

In fact, the general analytical method in our cases involves not an explicit transactional approach but an evaluation of any commonality in the "nucleus of operative facts" of the actions. *See, e.g.*, *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1290 (11th Cir. 2007) (concluding that two actions encompassed the same "broad nucleus of fact"); *In re Atlanta Retail*, 456 F.3d at 1288 (reciting "nucleus of operative fact" standard); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d

---

[4] The First, Fourth, Fifth, Tenth, and D.C. Circuits have all explicitly adopted and applied the most recent Restatement test. *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1202 (10th Cir. 2000) ("We employ the transactional approach of the Restatement (Second) of Judgments . . . ."); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000) (holding that, in determining whether two suits "involved the same cause of action, we apply the transactional test of the Restatement (Second) of Judgments"); *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) ("The District of Columbia, like the majority of jurisdictions, has adopted the Second Restatement's 'transactional' approach . . . ."); *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996) ("In defining the cause of action for res judicata purposes, this circuit has adopted the 'transactional' approach of the Restatement (Second) of Judgments."); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) ("Consistent with the modern trend, . . . we have adopted a transactional approach to the identity of claims question . . . .").

1265, 1270 (11th Cir. 2002) (same); *Isr. Disc. Bank*, 951 F.2d at 315 ("In this analysis, a court should compare the factual issues explored in the first action with the factual issues to be resolved in the second action."). Rather than attempting to define the "transaction" at issue in the first case, we line up the former and current cases side-by-side to assess their factual similarities. *See In re Atlanta Retail*, 456 F.3d at 1288–89 (comparing prior and current cases by looking "not only at the facts that were before the [first] court, but also the factors which the [first] court was required . . . to consider in making its previous decisions"); *In re Piper Aircraft*, 244 F.3d at 1297 (holding that the facts at issue in the contested suit "were neither raised nor litigated in the" first action); *Isr. Dis. Bank*, 951 F.2d at 315 (comparing the essential factual allegations made in the first and second suits).

This case presents a close question regarding the factual similarities between the two cases. United points out that the factual allegations in the RICO suit and the factual allegations in the suits now on appeal are substantially similar, and some of the allegations appear almost verbatim in both complaints. United also asserts that simply because the Appellants' claims in this case are for breach of contract instead of conspiracy does not make the claims sufficiently different for res judicata purposes. *See Adams*, 493 F.3d at 1289 ("Claim preclusion applies not only to the precise legal theory presented in the previous litigation, but to all legal

28

theories and claims arising out of the same operative nucleus of fact.") (internal quotation marks omitted). It is evident that the allegations "defendant harmed plaintiff" and "defendant conspired to harm plaintiff" are substantially related.

Appellants respond by insisting that the evidence needed to prove their RICO claims in the first action is not the same as that needed to prove their contract-based claims here. *See Shane*, 430 F. Supp. 2d at 1344 ("[T]he Court concludes that the evidence proffered by the Plaintiffs is insufficient to allow a jury to find reasonably that the Defendants conspired to manipulate their claims processing software to systematically underpay doctors."). This disparity in evidence needed to prove the two causes of action, they contend, reveals that the two cases are not the same for purposes of res judicata. *See In re Atlanta Retail*, 456 F.3d at 1288 ("If the evidence crucial to the second action was never raised before the court in the first action, it is 'powerful evidence' that the two cases are not based on the same nucleus of operative fact.").

We admit the valid and persuasive positions of both sides here. Our analytical task is seemingly straightforward: evaluate the similarity of the facts needed to be presented in each of the cases. Even this assignment, however, carries little order and few guideposts. *See Andersen v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996) ("Nonetheless, even the 'facts' of a case may be described

29

either broadly or narrowly."). We are fortunate in this case to have the work of a prior panel of this court on which to rely for guidance. *See Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004).

In *Klay*, we affirmed class certification of the RICO claims in *Shane* but reversed certification of the state law claims, which were ultimately dropped from the suit. We noted that "[t]he facts that the defendants conspired to underpay doctors, and that they programmed their computer systems to frequently do so in a variety of ways, do nothing to establish that any individual doctor was underpaid on any particular occasion." *Id.* at 1264. This court went on to state that "[w]hile allegations concerning the defendants' conspiracy to underpay doctors, or their policy of aiding and abetting each other in underpaying doctors, went directly to material elements of each individual plaintiff's RICO claim, here they are, at best, merely circumstantial evidence tangentially relevant to each individual plaintiff's breach of contract claim." *Id.* We observe the potential inconsistency in emphasizing the differences between the types of claims so emphatically in *Klay* and a decision here resting on the notion that these claims arise from the same nucleus of operative fact. That the evidence presented in the prior action is only "tangentially relevant" to the claims like those made here argues against finding an identity between the causes of action.

We also note that our analysis of the claim identity does not offend the underlying policy goals of the res judicata doctrine. We are persuaded that these goals would not be legitimately furthered by a finding of identity here when our court, in the midst of the first case, made such stark pronouncements about the contrasts between the types of claims initially and later asserted. Our decision in *Klay* created whatever judicial inefficiencies might result in allowing these claims to proceed by splitting the claims made in the case for class action certification.[5] Moreover, given our emphasis on the distinctions between the RICO and contract claims, United should have expected no repose when the district court resolved only the RICO claims, because it was on notice that this court viewed the RICO claims and contract-based claims as distinct. *Cf.* Wright, Miller, & Cooper, *supra*, § 4403 ("We want to free people from the uncertain prospect of litigation, with all its costs to emotional peace and the ordering of future affairs. Repose is the most important product of res judicata.").

In consideration of our prior decision in *Klay*, where we relied heavily on

---

[5] Some have been critical of the piecemeal certification of class action status for claims within a case. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 446–47 (4th Cir. 2003) (Niemeyer, J., dissenting) (arguing that the predominance requirement in Fed. R. Civ. P. 23(b) applies to the action as a whole, not to individual subclasses or claims); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("The proper interpretation of the interaction between [Fed. R. Civ. P. 23] subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial."). We did not directly address the propriety of such partial certification in *Klay*.

31

the differences between the RICO claims and contract-based claims brought against United in approving only the RICO claims for class certification, we conclude that those differences still exist sufficiently to prevent the application of res judicata to the claims presented here. Our decision turns not on the technical distinctions between the causes of action alleged but on the disparity in facts and evidence needed to prove the RICO claims as opposed to these contract-based claims.[6] Because the claims resolved in the *Shane* litigation did not compose the same cause of action as those presented by the Appellants here for purposes of claim preclusion, they are not barred by res judicata.

## IV. CONCLUSION

After our review of the record and the briefs, and after hearing oral argument, we hold that the district court properly exercised jurisdiction over the Appellants' claims because they are completely preempted by ERISA. Nevertheless, these claims are not barred by the disposition of the *Shane* litigation because of the disparity between the claims pursued here and those resolved in *Shane*. We reverse the district court order dismissing these claims and remand for

---

[6] We emphasize the limited scope of our holding. We do not mean to suggest in any general sense that claims based alternatively on harm and conspiracy to harm are sufficiently distinct to prevent the application of res judicata if those claims are pursued separately. But, in this close case, our prior pronouncements about the gulf between these particular conspiracy and contract-based claims weigh heavily in our decision.

further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**