Thomas GRINER and Fern Cohn, on behalf of themselves and all persons similarly situated, Plaintiffs,

v.

SYNOVUS BANK, d/b/a Bank of North Georgia, Columbus Bank and Trust Company, AFB & T, Sea Island Bank, SB & T Bank, CB & T Bank of Middle Georgia, The Coastal Bank of Georgia, First State Bank and Trust Company of Valdosta, Commercial Bank, Georgia Bank & Trust, Bank of Coweta, First Community Bank of Tifton, Citizens First Bank, Commercial Bank & Trust Company of Troup County, and Cohutta Banking Company, Defendant.

Civil Action No. 1:10–CV–2747–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 22, 2011.

**1340**

C. Ronald Ellington, C. Ronald Ellington, Attorney, PC, Athens, GA, Gerald Davidson, Jr., Mahaffey Pickens Tucker, LLP, Lawrenceville, GA, Jason James Carter, Bondurant Mixson & Elmore, Randi Engel Schnell, Steven Rosenwasser, Michael B. Terry, Mary Webb Pyrdum, Bondurant Mixson & Elmore, James Benjamin Finley, M. Kathryn Rogers, MaryBeth Vassil Gibson, The Finley Firm, P.C., Atlanta, GA, for Plaintiffs.

Stephen M. Colangelo, Morrison & Foerster, LLP–DC, Washington, DC, Steven M. Collins, Christopher Allen Riley, Alston & Bird LLP, Atlanta, GA, William L. Tucker, Page Scrantom Sprouse Tucker & Ford, P.C., Columbus, GA, for Defendant.

## ORDER

AMY TOTENBERG, District Judge.

This is a case about bank card overdraft fees. Plaintiffs, Defendant's customers, claim that the fees amount to usurious interest charges. The questions presently before the Court are whether the case should remain in federal court, and if so, whether Plaintiffs have stated a claim upon which relief can be granted.

### I.  Background

Thomas Griner and Fern Cohn are consumers who maintain bank accounts with Defendant Synovus Bank, a Georgia bank that does business under other trade names through its various bank divisions. First Am. Compl. ¶¶ 24, 34.  Mr. Griner and Ms. Cohn filed suit against Synovus Bank in the Superior Court of Gwinnett County, Georgia, asserting claims for excessive overdraft fees on behalf of themselves and all persons similarly situated.[1]

Plaintiffs allege that they and other members of the putative class have been harmed by Defendant's practice of failing to notify users of point-of-sale debit cards or automated-teller-machine cards when their associated bank accounts contain insufficient funds to cover a purchase or cash withdrawal. Id. ¶¶ 2–3.  According to Plaintiffs, Defendant instead follows its "written, standardized policies and procedures," honoring the withdrawal request and assessing a fee for the overdraft of the customer account, no matter how small the insufficiency. Id. ¶¶ 4–5.  Plaintiffs claim that Defendant charges the customer up to $36 per overdraft and an additional fee of up to $35 on accounts that remain in overdraft for more than seven consecutive calendar days. Id. ¶¶ 6, 8, 11.  Plaintiffs aver that they were each assessed such over-

---

**1.** Gwinnett County assigned the action Civil Action File No. 10C–11235–3.

draft fees at least once. *Id.* ¶¶ 72(d), 91–94.

In Counts I and II, Plaintiffs assert state law claims for violations of Georgia's usury laws, on the theory that the overdraft fees are a form of excessive interest. *Id.* ¶¶ 85–104. In Count III, Plaintiffs claim that Defendant's use of funds in Plaintiffs' accounts to pay the overdraft fees incurred on the accounts constitutes conversion under Georgia law. *Id.* ¶¶ 15, 105–112. In Count IV, Plaintiffs assert an equitable claim for "money had and received." *Id.* ¶¶ 113–23. Plaintiffs seek the refund of overdraft fees and overdraft collection fees charged to them and the putative class members going back to July 30, 2006—four years before they filed their original complaint. *Id.* ¶ 17.

On August 27, 2010, Plaintiffs filed an amended complaint, and on September 1, 2010, Defendant timely removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. In the notice of removal, Defendant asserts that the Court has subject matter jurisdiction over the action because Plaintiffs' claims are completely preempted by the National Bank Act, 12 U.S.C. §§ 85, 86 ("the NBA") and Section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1831d ("DIDA"). On September 27, Plaintiffs filed a second amended complaint, and on September 29, they moved to remand the case to state court, contending that their state law claims are not preempted by federal law and removal was therefore improper.[2] On October 7, Defendant moved to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure for failing to state a claim.

The matter is now before the Court on Plaintiffs' Motion to Remand [Doc. 14] and Defendant's Motion to Dismiss [Doc. 21]. The Court first considers Plaintiffs' motion to remand the case to state court for lack of subject matter jurisdiction. It will then consider the motion to dismiss to the extent its jurisdiction allows. *See* 14C Charles A. Wright et al., *Federal Practice and Procedure* § 3739 (4th ed. 2009) (explaining that a federal court lacking subject matter jurisdiction may not rule on other pending motions, including a motion to dismiss); *see also In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir.1959); *Nichols v. Se. Health Plan of Ala., Inc.*, 859 F.Supp. 553, 559 (S.D.Ala. 1993); *cf. Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1357 (11th Cir.2003) (holding that because complete preemption was lacking, the case must be remanded for the state court to determine whether the plaintiff's claims were subject to ordinary federal preemption).

## II. Legal Standard on Motion to Remand

■ "A defendant may remove a case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally." *Kemp v. Int'l Bus. Machs. Corp.*, 109 F.3d 708, 711 (11th Cir.1997) (citing 28 U.S.C. § 1441). "The existence of federal jurisdiction is tested at the time of removal," and the defendant bears the burden of proof. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294–95 (11th

**2.** Realizing that the case ran the risk of being transferred to a multidistrict litigation pending in Florida, on October 28, 2010, Plaintiffs moved to expedite ruling on their motion to remand to state court. Indeed, on November 5, the Judicial Panel on Multidistrict Litigation issued an order conditionally transferring the action. *In re Checking Account Overdraft Litigation*, MDL No.2036, ECF 373 (S.D.Fla.). On February 3, 2011, however, the panel vacated the conditional transfer order. *Id.*, ECF 459. The Court therefore **DENIES as moot** Plaintiffs' motion to expedite ruling [Doc. 24].

Cir.2008). "Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." *Id.* at 1294.

The parties agree that no diversity of citizenship jurisdiction exists in this case; thus, the Court must determine whether the case presents a federal question. *See* Notice Removal at 4–10. Plaintiffs do not expressly assert a claim under federal law. Defendant argues, nevertheless, that Plaintiffs' claims are completely preempted by federal law, and as a result, the claims effectively present a federal question. *Id.* at 4–5.

▮▮▮ In general, when a state-law claim is brought in state court, preemption is insufficient to support removal of the case to federal court. *See, e.g., Behlen v. Merrill Lynch,* 311 F.3d 1087, 1090 (11th Cir.2002) ("[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") (quoting *Caterpillar v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). The doctrine of "complete preemption" is an exception to the well-pleaded complaint rule that allows for the removal of certain types of cases where the "pre-emptive force of federal law is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425 (citation and punctuation omitted); *accord Kemp,* 109 F.3d at 712.

▮▮▮ Courts rarely find complete preemption. The Supreme Court of the United States has extended the complete preemption doctrine only to statutes that "provide[ ] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v.*

*Anderson,* 539 U.S. 1, 8–9, 11, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (holding that the NBA completely preempts state-law usury claims against national banks and recounting findings of complete preemption under the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 ("ERISA")). The federal statute must also show "extraordinary preemptive force," which "must be manifest in the clearly expressed intent of Congress." *Geddes,* 321 F.3d at 1353 (holding that the doctrine of complete preemption does not apply to the Railway Labor Act); *accord Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."). In such rare cases, a state-law claim is removable under 28 U.S.C. § 1441(b) because the "federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank,* 539 U.S. at 8, 123 S.Ct. 2058 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

▮▮▮ Once a court determines that federal law completely preempts an asserted state-law cause of action, it must then consider whether the asserted facts of the case support removal. *Geddes,* 321 F.3d at 1357; *Kemp,* 109 F.3d at 712–13 (examining preemption in the context of ERISA). To find that complete preemption applies to that plaintiff's claims and removal of the case is therefore proper, the court must conclude that the relief the plaintiff seeks would be available under

the preemptive federal statute. *Kemp,* 109 F.3d at 712–13.

## III. Discussion

Defendant contends that the action is subject to removal under federal question jurisdiction on two grounds: complete preemption under the NBA and complete preemption under DIDA. Notice Removal at 5. Plaintiffs in turn emphasize that they have not asserted any federal claims and, in fact, have expressly disavowed any federal claims. Br. Supp. Mot. Remand at 4 (referring to First Am. Compl. ¶ 26). They also argue that (1) the NBA does not preempt their claims because Plaintiffs do not plead claims against any national banks, and (2) DIDA does not preempt their claims because DIDA preempts state laws governing interest rates only under certain conditions, and therefore DIDA's preemptive force is not so extraordinary as to convert Plaintiffs' state-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Br. Supp. Mot. Remand at 2–3.

### A. National Bank Act

■ Section 85 of the NBA governs the amount of interest a national bank may charge, and § 86 provides the exclusive remedy for violations of § 85. *Beneficial Nat'l Bank,* 539 U.S. at 5, 123 S.Ct. 2058. The parties do not dispute that a state-law usury complaint against a national bank presents a federal question and is removable pursuant to 28 U.S.C. § 1441(b). Notice Removal at 6; Br. Supp. Pls.' Mot. Remand at 7. Rather, they dispute whether any of Plaintiffs' claims can be construed as claims against a national bank.

Although Defendant is a state-chartered bank, it argues that Plaintiffs raise claims against a national bank because some of its predecessor banks were national banks. *See* First Am. Compl. at 1; Notice Removal at 4, 6. Specifically, Peachtree National Bank merged into state-chartered bank

Bank of North Georgia in September 2007, and National Bank of Walton County merged into state-chartered bank AFB & T in September 2008. Notice Removal at 4. Later, in June 2010, the Bank of North Georgia and AFB & T combined with numerous other banks to create Synovus Bank. *Id.* Defendant contends, therefore, that overdrafts Peachtree National Bank and National Bank of Walton County charged from July 30, 2006, until they each merged with a state bank should be imputed to Synovus Bank as the national banks' eventual successor. *Id.* at 6. Consequently, the Court must construe a portion Plaintiffs' claims as usury claims against those national banks. *Id.* Because the NBA completely preempts those usury claims, Defendant argues, this Court has federal question jurisdiction over those usury claims and may exercise supplemental jurisdiction over the remaining claims. *Id.* at 6–7.

The Court disagrees. Defendant has presented evidence of the successor relationship between the national banks and the state banks that resulted from the mergers of those national banks with state banks. *See* Mem. Law Opp. Mot. Remand, Ex. A. It has also shown evidence that the state banks assumed the liabilities of the merging national banks. *Id.* Thus, had Plaintiffs asserted a claim for *all* of the overdraft fees Synovus collected from each class member within the four years preceding the complaint, Defendant could arguably have carried its burden of showing that some portion of Plaintiffs' claims arise from allegations that a predecessor national bank improperly charged overdraft fees, and consequently, that some of the relief Plaintiffs seek would be available under the NBA.

At the time of removal, however, Plaintiffs' complaint contained a jurisdictional assertion in which they specified that they

"assert no claim under federal law and expressly disavow any claim under federal law." *See* First Am. Compl. ¶ 26. The Court finds that Plaintiffs therefore expressly abandoned any portion of their usury claims that would have been raised, under the doctrine of complete preemption, pursuant to the NBA. Defendant cites no authority, and the Court finds none, that precludes a plaintiff from wholly disavowing a potential claim that it could have brought under a preempted cause of action, thereby deliberately avoiding federal jurisdiction. *See* Mem. Opp. Mot. Remand 9–12.[3] "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

Were there any question that Plaintiffs eschewed relief based on the NBA, it was resolved when Plaintiffs filed another amended complaint a few weeks after removal. *See* Second Am. Compl., Sept. 27, 2010. In that amendment, Plaintiffs further clarified the scope of their allegations:

> Plaintiffs do not seek and expressly disavow any damages or claims arising from any Overdraft Fees, Overdraft Collection Fees, or any similar fees or charges collected: (a) by (i) Peachtree National Bank, (ii) National Bank of Walton County and/or (iii) any other bank chartered under the National Bank Act, 12 U.S.C. §§ 21, *et seq.* whose liabilities were acquired by Defendant; and, (b) during the time such bank was a national bank under the National Bank Act, 12 U.S.C. §§ 21, *et seq.*

*Id.* ¶ 27; Mot. Remand at 8–11. This post-removal allegation provides further grounds for remand. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Powerex v. Reliant Energy Servs., Inc.,* 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007) ("[A] case can be properly removed and yet suffer from a failing in subject-matter jurisdiction that requires remand."); *see also Easton v. Crossland Mortg. Corp.,* 114 F.3d 979, 982 (9th Cir.1997) (finding remand proper and noting that "[a]ny lingering apprehension about the plaintiffs' intentions was resolved by plaintiffs' immediate actions clarifying their intent upon removal.").

---

**3.** Defendant cites *Borrero v. United Healthcare of New York, Inc.,* 610 F.3d 1296, 1303 (11th Cir.2010), for the principle that when "factual allegations in a complaint [plead] claims preempted under federal law," a plaintiff may not disavow the federal claims. Mem. Opp. Mot. Remand at 10. *Borrero* is inapposite. In *Borrero,* all of the state contract claims the plaintiffs pursued sought enforcement of rights under ERISA plans, and therefore, they were inherently preempted by federal ERISA law. *See id.* at 1301. Because all of those state contract claims were, in effect, federal ERISA claims, the plaintiffs could not continue to pursue them while simultaneously disclaiming relief under federal law. *See id.* at 1301–03. Thus, all of the plaintiffs' claims in *Borrero* necessarily implicated federal law. *See id.* at 1303.

Here, in contrast, Plaintiffs had the ability to raise two different types of claims: (1) claims alleging usury committed by state banks, which are claims that could not be brought under the NBA, and (2) claims alleging usury committed by national banks, which are claims that, under the doctrine of complete preemption, could only be brought under the NBA. Plaintiffs could—and did—avoid federal preemption of claims against national banks simply by choosing not to pursue the latter category of potential claims. In other words, all of Plaintiffs' claims are predicated on duties independent of the NBA and thus do not provoke federal question jurisdiction under the Act. *See id.* at 1304 (distinguishing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1353 (11th Cir. 2009), in which the claims predicated on duties independent of ERISA were subject to supplemental jurisdiction in federal court only because they were joined with ERISA claims).

Simply put, the complaint at the time of removal expressly disavowed any claims Plaintiffs might have brought under federal law, and the amendment filed soon after removal further clarified that Plaintiffs allege claims only against state-chartered banks. Therefore, the complaint expressly excludes any claims that could have been raised against a national bank, and as a consequence, no federal question subject matter jurisdiction arises under the NBA. Accordingly, the NBA was not a proper ground for removal, and it does not pose any barrier to remand.

**B. DIDA**

Alternatively, Defendant contends that "DIDA, 12 U.S.C. § 1831d, is to state-chartered, federally insured banks what sections 85 and 86 of the NBA are to national banks," and therefore "DIDA completely preempts state-law usury claims against state-chartered banks." Notice Removal at 7. Plaintiffs argue that DIDA only partially preempts state-law usury claims against state-chartered banks and thus does not provide grounds for federal question jurisdiction or removal. Br. Supp. Mot. Remand at 6.

■ There are very few opinions that examine DIDA's preemptive power, and even fewer that consider whether DIDA *completely* preempts state-law usury claims against state banks. The Court of Appeals for the Eleventh Circuit has yet to address the issue. Thus, Defendant's argument principally relies on opinions from the Courts of Appeals for the Third and Fourth Circuits and from the Federal Deposit Insurance Corporation ("FDIC"). Notice Removal at 7–8; Mem. Law. Opp. Mot. Remand at 16. Plaintiffs rely on the Eighth Circuit's reasoning. Br. Supp. Mot. Remand at 3. For the reasons discussed in *Thomas v. U.S. Bank National Association ND,* 575 F.3d 794 (8th Cir. 2009), and herein below, the Court finds

that DIDA does not completely preempt state-law usury claims against federally insured, state-chartered banks and does not establish the federal question jurisdiction necessary for removal of this matter to federal court.

**1. Statutory Interpretation**

■ In interpreting a statute, the Court starts with the statute's plain language and presumes it to be conclusive "unless the literal application of the statute would produce a result demonstrably at odds with the intentions of its drafters." *In re Se. Banking Corp.,* 156 F.3d 1114, 1120 (11th Cir.1998) (citation and punctuation omitted).

**a. Plain Language**

Two subsections of DIDA are at issue in the instant matter: § 1831d(a) and § 1831d(b). *See* Notice Removal at 7; Mot. Remand at 15–17; Mem. Opp. Mot. Remand at 19–20. Section 1831d(a) is a substantive provision that discusses "the circumstances under which a federally-insured state-chartered bank may charge the interest rate allowed by federal law notwithstanding state law to the contrary," and § 1831d(b) is the remedy provision. *Thomas,* 575 F.3d at 797–98. The substantive portion of the statute, in relevant part, provides as follows:

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, ... with respect to interest rates, *if* the applicable rate prescribed in this subsection exceeds the rate such State bank ... would be permitted to charge in the absence of this subsection, such State bank ... may, notwithstanding any State constitution or statute which is hereby *preempted for the purposes of this section,* take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of

exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank ... is located or at the rate allowed by the laws of the State ... where the bank is located, whichever may be greater.

12 U.S.C. § 1831d(a) (emphasis added).

As the Eighth Circuit aptly observed in *Thomas*, the plain language of the statute "clearly indicates the interest rate allowed by federal law only comes into play *'if* the applicable rate prescribed in this subsection exceeds the rate such State bank ... would be permitted to charge in the absence of this subsection.'" 575 F.3d at 798 (quoting 12 U.S.C. § 1831d(a)). In other words, DIDA preempts state law only when the interest rate it authorizes is greater than the rate that would have been allowed by the state law operating alone. The phrase, "notwithstanding any State constitution or statute which is hereby preempted *for the purposes of this section,*" underscores the narrowness of the preemptive effect. *Thomas,* 575 F.3d at 798. This indicates that the conflicting state statute or constitution is not completely preempted, but instead is preempted only for DIDA's stated purpose of ending interest-rate discrimination against federally insured, state-chartered banks. *See* 12 U.S.C. § 1831(a); *Thomas,* 575 F.3d at 798.

Section 1831d(b), the remedy provision, states in relevant part that:

If the rate prescribed in subsection (a) of this section exceeds the rate such State bank ... would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank ... taking, receiving, reserving, or charging such interest.

12 U.S.C. § 1831(b) (emphasis added).

This section also clearly indicates the conditional nature of the statute's preemptive power by stating that the remedy applies only *"[i]f* the rate prescribed in subsection (a) of this section *exceeds* the rate such State bank ... would be permitted to charge in the absence of this section" and reiterating that in such case, the "State fixed rate [would be] *thereby preempted* by the rate described in subsection (a)." *Thomas,* 575 F.3d at 799 (quoting 12 U.S.C. § 1831d(b) (emphasis added)). Thus, the plain language of the statute indicates that DIDA preempts the state rate and any state remedy only when the rate prescribed in that statute is greater than the rate authorized under state law. *Thomas,* 575 F.3d at 799.

Therefore, according to DIDA's plain language, it does not provide the exclusive cause of action for usury claims asserted against state-chartered banks, nor does it serve as the exclusive source of remedies governing such usury actions. *Cf. Beneficial Nat'l Bank,* 539 U.S. at 8, 123 S.Ct. 2058 (noting that in the categories of cases in which the Supreme Court found complete preemption, the federal statute at issue had provided "the exclusive cause of action for the claim asserted and also set

forth procedures and remedies governing that cause of action"). Accordingly, DIDA does not completely preempt state-law usury claims against state-chartered banks. *See id.* The plain text of 12 U.S.C. § 1831d therefore does not provide grounds for federal question jurisdiction or removal to federal court.

### b. Drafters' Intent

Under the Court's plain-language interpretation, a cause of action for usury against a state-chartered bank arises under state law, unless the maximum interest DIDA authorizes is greater than what state law prescribes, in which case DIDA will preempt the state law. This plain-text interpretation is consistent with the manifest intention of DIDA's drafters. As Defendant acknowledges, Congress's policy in enacting DIDA was to place "national and federally insured state-chartered banks on an equal footing." Mem. Law Opp. Mot. Remand at 23. The Court's interpretation effects Congress's intent by acknowledging a consistent maximum interest rate for national and state-chartered banks and by providing penalties for exceeding that maximum rate, regardless of whether state law or federal law prescribes the rate.

DIDA's stated purpose is "to prevent discrimination against State-chartered insured depository institutions, including insured savings banks" that, without DIDA's protection, would be subject to lower interest-rate limits under state usury laws than national banks would enjoy under the NBA. *See* 12 U.S.C. § 1831d(a); *see also Greenwood Trust Co. v. Commonwealth,* 971 F.2d 818, 826 & n. 6 (1st Cir.1992) (explaining the history and purpose of DIDA); *Saxton v. Capital One Bank,* 392 F.Supp.2d 772, 781 (S.D.Miss. 2005) (same). Pursuant to the NBA, national banks may charge the *highest* of the interest rate permitted without reference to the NBA, the rate permitted by state law in the bank's home state, or an alternative interest rate derived from the local ninety-day commercial paper rate. 12 U.S.C. § 85; *see also Marquette Nat'l Bank v. First Omaha Serv. Corp.,* 439 U.S. 299, 313–20, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978); *Greenwood Trust Co.,* 971 F.2d at 827. If state-chartered banks were bound to charge only up to the limit the law of the borrower's state sanctioned, they could find themselves at a competitive disadvantage to national banks at times when the NBA rate exceeds the rate allowable under state law. *Greenwood Trust Co.,* 971 F.2d at 827; *Saxton,* 392 F.Supp.2d at 781. DIDA therefore establishes a higher interest-rate ceiling—one equal to the rate national banks can levy under the NBA—when state banks otherwise find themselves at a competitive disadvantage.[4] *Saxton,* 392 F.Supp.2d at

---

4. *Compare* the relevant portion of the NBA:

Any association may ... charge on any ... evidences of debt, interest at the rate allowed by the laws of the State ... where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under title 62 of the Revised Statutes.

12 U.S.C. § 85, *with* the relevant portion of DIDA:

[I]f the applicable rate prescribed in this subsection exceeds the rate such State bank ... would be permitted to charge in the absence of this subsection, such State bank ... may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, ... charge on any ... evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank ... is located or at the rate allowed by the laws of the

781; *see also Greenwood Trust Co.*, 971 F.2d at 827 (explaining that DIDA "achieves parity between national banks and their state-chartered counterparts" by, like the NBA, allowing state-chartered banks to charge according to the highest of three interest rate ceilings: the highest rate permitted without reference to federal law, the highest rate permitted by state law in the bank's home state, or the alternative interest rate derived from the local ninety-day commercial paper rate).

The penalties authorized under the Court's interpretation of § 1831d serve to support Congress's equalization goals. Pursuant to the NBA, any national bank that knowingly charges interest at a rate exceeding that authorized under § 85 is subject to penalties. *See* 12 U.S.C. § 86; *Beneficial Nat'l Bank*, 539 U.S. at 9, 123 S.Ct. 2058.[5] In contrast, DIDA provides for penalties against state-chartered banks that knowingly charge excessive interest only "*if*" the DIDA rate "*exceeds*" the rate the state-chartered bank would be permitted to charge absent § 1831d's provisions. *See* 12 U.S.C. § 1831d(b)[6] (emphasis added); *Thomas*, 575 F.3d at 799. Thus, in cases where the allowable interest rate in the borrower's state exceeds the § 1831d(a) rate, the DIDA penalty clause would not come into play. Consequently, if the Court held that DIDA completely preempts state law usury claims, when the interest rate allowable under state law exceeds the § 1831d(a) rate, a state-chartered bank charging an interest rate in excess of both the state rate and the § 1831d(a) rate would be immune to usury claims. Congress could not have intended such an absurd result.[7] *See Beneficial Nat'l Bank*, 539 U.S. at 8, 123 S.Ct. 2058

State ... where the bank is located, whichever may be greater.
12 U.S.C. § 1831d(a).

5. 12 U.S.C. § 86 provides, in relevant part, that:

The ... charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the ... evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred.

6. 12 U.S.C. § 1831d(b) provides, in relevant part, that:

*If* the rate prescribed in subsection (a) of this section exceeds the rate such State bank ... would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section,

... charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the ... evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank ... charging such interest.
12 U.S.C. § 1831d(b) (emphasis added).

7. Defendant states that conditional preemption "would stand logic on its head" because preemption, and therefore, jurisdiction, would be tied to a fluctuating interest rate. Mem. Law. Opp. Mot. Remand at 20–21. Defendant does not explain the dire consequences it apparently anticipates, and the Court is at a loss to guess what they might be. Indeed, as discussed above, if the Court were to find complete preemption, as Defendant urges, the *availability of a remedy* for usury would instead be tied to the fluctuating interest rate—a result that is not only illogical, but also at odds with Congressional intent and the plain language of the statute.

(explaining that complete preemption applies only when it is clear that Congress meant for the federal statute to supply "the exclusive cause of action").

Instead, it is clear that Congress, in enacting DIDA, provided a cohesive regulatory system that places national banks and state banks at parity by preserving state law under certain circumstances. In cases where a state's interest-rate limit is less than the federal rate allowable under § 1831d(a) or § 85, DIDA serves to put state banks on equal footing with national banks: the national banks are authorized to charge the federal interest rate under the NBA and may be penalized under the NBA for exceeding that rate, and the state banks are authorized to charge the federal interest rate under DIDA and may be penalized under DIDA for exceeding that rate. Likewise, when the interest rate available under state law is higher than the federal rate allowable under § 1831d(a) or § 85, the *national banks* are authorized to charge the state interest rate under the NBA and may be penalized under the NBA for exceeding that rate, and the *state banks* are authorized to charge the state interest rate under state law and may be penalized under state law for exceeding that rate. In other words, depending on the relationship between state-law and federal-law interest-rate limits, a state-chartered bank that charges excessive interest is subject to usury claims under either DIDA or state law, either one of which render the state-chartered bank's authority to charge interest equivalent to a national bank authority under the NBA. This statutory scheme is in harmony with the drafters' intent to end discrimination against state-chartered depository institutions.

## 2. States' Traditional Authority over State–Chartered Banks

The Court's interpretation also recognizes the states' historical role in regulating state banks. *See, e.g., Ne. Bancorp, Inc. v. Bd. of Governors,* 472 U.S. 159, 177, 105 S.Ct. 2545, 86 L.Ed.2d 112 (1985); *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 38, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980) ("[B]anking and related financial activities are of profound local concern[, and] sound financial institutions and honest financial practices are essential to the health of any State's economy and to the well-being of its people. Thus, it is not surprising that ever since the early days of our Republic, the States have chartered banks and have actively regulated their activities."). As the Eleventh Circuit explained in *BankWest, Inc. v. Baker,*[8] the National Banking Act of 1864 "establishes that national banks are free from state interference and subject only to federal banking regulations," but there is no corresponding grant of power to state banks. 411 F.3d 1289, 1301 n. 22 (11th Cir.2005). The *BankWest, Inc.,* court went on to note that despite the creation of the FDIC, which was established "for the purpose of protecting customers of failed banks by making deposit insurance available to qualified state and federal lending institutions, ... states and state laws, ... remain the primary regulators of state banks." *Id.* The courts "have long presumed that Congress does not cavalierly pre-empt state-law, particularly in those areas in which Congress has legislated in a field which the States have traditionally occupied." *Id.* at 1303 (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (punctuation omitted)). The Court's interpretation conforms with this

8. Although the *BankWest* opinion was later vacated and therefore is not binding precedent, it is the only Eleventh Circuit opinion to touch on § 1831d's preemptive effect. Thus, the Court finds its analysis informative.

tradition by "giv[ing] the statute a narrow construction in order to be consistent with both federalism concerns and the historic primacy of state regulation." *See Ban-kWest, Inc.,* 411 F.3d at 1303.

### 3. Conflicting Authority

The Court finds the contradicting authority cited in Defendant's briefs to be unpersuasive for two reasons: (1) it fails to acknowledge significant portions of DIDA's text and (2) it is of questionable precedential value.

### a. Failure to Consider Statutory Text

The most troubling aspect of the authority Defendant cites is its failure acknowledge significant textual differences between the NBA and DIDA. The *Discover Bank* opinion is typical in this regard: it references the common language that appears in both the NBA and DIDA; notes that "[w]hen Congress borrows language from one statute and incorporates it into a second statute, the language of the two acts ordinarily should be interpreted the same way"; and therefore, concludes that just as the Supreme Court read the NBA to completely preempt state-law usury claims against national banks, DIDA likewise should be interpreted to provide for complete preemption over state-law usury claims against federally insured state-chartered banks. *Discover Bank v. Vaden,* 489 F.3d 594, 605 (4th Cir.2007), *rev'd on other grounds without reaching the preemption issue,* 556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) (quoting *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 295–96 (3d Cir.2005)); *see also Greenwood Trust Co. v. Commonwealth,* 971 F.2d 818, 827 (1st Cir.1992); Br. Amicus Curiae FDIC at 13 *Discover Bank v. Vaden,* 489 F.3d 594 (4th Cir.2007); *cf.* Interest Charges Under Section 27 of the Federal Deposit Insurance Act, 63 Fed. Reg. 19258, 19259 (Apr. 17,

1998) [9] (opining only that DIDA and the NBA should be "construed similarly" with regard to the term "interest").

None of Defendant's cited authority addresses the language in DIDA that *differs* from the language in the NBA, however. *See, e.g., Discover Bank,* 489 F.3d at 605 n. 14 (dismissing the textual differences between the statutes as "niggling variations"); *Greenwood Trust Co.,* 971 F.2d at 827 n. 7 (same). This is problematic because "[t]he starting point for all statutory interpretation is the language of the statute itself," and the courts are to read each statute "to give full effect to each of its provisions." *In re Tennyson,* 611 F.3d 873, 877 (11th Cir.2010); *accord Garcia v. Vanguard Car Rental USA, Inc.,* 540 F.3d 1242, 1247 (11th Cir.2008) (providing that under the "presumption against surplusage," the court must "strive to give effect to every word and provision in a statute when possible"). Thus, it is also important for an interpreting court to consider the textual differences between statutes concerning the same subject matter. *Cf. Bates v. United States,* 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997) (holding that where Congress includes particular language in one section of an act but omits it in another, it is generally presumed that Congress acted intentionally).

In *In re Community Bank of Northern Virginia,* for example, when the Third Circuit held that DIDA, like the NBA, completely preempts state usury claims against state-chartered banks, it quoted the relevant provisions of § 1831d(a) as follows:

> In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, ... with respect to interest

---

9. This FDIC opinion of general counsel concerns the definition of the term "interest" and does not contemplate federal preemption of state law.

rates ... such State bank[s] ... may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank ... is located or at the rate allowed by the laws of the State, territory, or district where the bank is located whichever may be greater.

*Id.* at 295 n. 10 (emphasis removed). Indeed, the excerpt squares with the relevant language contained in the NBA. See 12 U.S.C. § 85 (quoted, in relevant part at n. 4, supra). However, when one compares § 85 and the redacted version of § 1831d(a) contained in In re Community Bank with the full version of § 1831d(a), it is clear that the Third Circuit's second set of ellipses omitted conditional language that is critical to understanding that unlike the NBA, DIDA applies only when the federal interest rate exceeds the maximum interest rate allowed under state law:

> In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, *if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection,* such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, in-

terest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

12 U.S.C. § 1831d(a) (emphasis added). *Discover Bank* and *Greenwood Trust* suffer from the same deficiency. *See Discover Bank*, 489 F.3d at 604; *Greenwood Trust Co.*, 971 F.2d at 822.

Each circuit court or FDIC opinion Defendant cites likewise fails to consider the conditional language that appears in § 1831d(b), DIDA's penalty provision, but not in § 86, the NBA's penalty provision. *Compare* 12 U.S.C. § 1831d(b) ("*If* the rate prescribed in subsection (a) of this section *exceeds* the rate such State bank ... would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, ... charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture ....") (emphasis added) *with* 12 U.S.C. § 86 ("The ... charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture ...."); *see Discover Bank*, 489 F.3d at 605 n. 14 (finding "niggling variations" between other portions of § 1831d(b) and § 86); *In re Cmty. Bank of N. Va.*, 418 F.3d at *passim* (no discussion of § 1831d(b)); *Greenwood Trust Co.*, 971 F.2d at *passim* (same); Br. Amicus Curiae FDIC at 11–13 *Discover Bank*, (No. 06–1221) (no textual analysis); Interest Charges Under Section 27 of the Federal Deposit Insurance Act, 63 Fed. Reg. at 19259 (no discussion of § 1831d(b) or pre-

emption). Because these authorities do not address the conditional language, they also fail to acknowledge that under certain circumstances, complete preemption would mean that federally insured state-chartered banks could charge usurious interest rates with impunity. In fact, the opinions make almost no mention of § 1831d(b), let alone analyze how a finding of complete preemption would impact DIDA's implementation.[10]

In contrast, in *Thomas*, the Eighth Circuit considered DIDA's full text, the differences between the relevant portions of the NBA and DIDA, and the impact of complete preemption on the remedies available on usury claims. *See* 575 F.3d at passim. The Court finds this plenary analysis significantly more persuasive than the reasoning discussed in Defendant's authority.

### b. On a "Precedential Limb"

Defendant argues that siding with the Eighth Circuit's *Thomas* opinion places the Court out on a "precedential limb." (Mem. Law Opp. Mot. Remand at 16.) Having closely examined Defendant's authority, the Court notes several issues that limit its persuasive value. In fact, it is Defendant's authority that, under careful review, falls like a house of cards.

As previously discussed, Defendant's argument largely relies on the Fourth Circuit's opinion in *Discover Bank v. Vaden*, 489 F.3d 594 (4th Cir.2007), and the Third Circuit's opinion in *In re Community Bank of Northern Virginia*, 418 F.3d 277

(3d Cir.2005), which both cite *Greenwood Trust Co. v. Commonwealth*, 971 F.2d 818 (1st Cir.1992), and two opinions issued by the FDIC. The Court will address its concerns with each opinion in turn.

### i. Analytical Weaknesses

The persuasive value of the Fourth Circuit's *Discover Bank* opinion is questionable for several reasons. First, the Supreme Court reversed and remanded *Discover Bank* without addressing the Fourth Circuit's preemption analysis. *See Discover Bank*, 129 S.Ct. at 1270 n. 4 ("Our disposition of this case makes it unnecessary to take up the question of § 27(a)'s preemptive force generally or in the particular context of Discover's finance charges. We therefore express no opinion on those issues."). Second, in *Discover Bank*, the plaintiff conceded that DIDA preempted her claims, and therefore she likely underbriefed the issue. *See id.* at 1269 ("On remand, Vaden 'concede[d] that the FDIA completely preempts any state claims against a federally insured bank.'").[11] Third, *Discover Bank* relies on *Greenwood Trust* and *In re Community Bank of Northern Virginia* for legal conclusions beyond the reach of those cases. *See id.* at 605 (relying on the persuasive value of *In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir.2005); *Greenwood Trust Co. v. Commonwealth*, 971 F.2d 818 (1st Cir.1992)).

**10.** Defendant argues that in *Gavey Properties/762 v. First Financial Savings & Loan Association*, 845 F.2d 519 (5th Cir.1988), the Fifth Circuit analyzed a similar "if" clause and found that it did not limit preemption of state usury law. *(See* Mem. Law Opp. Mot. Remand 18.) This is incorrect. Instead, the *Gavey* court recognized that a state bank could export its home-state interest-rate limits under federal law *if* the home state allowed for a higher rate than the laws of the state where the loan was made. *Gavey*, 845 F.2d at

522–23. In *Gavey*, the conditions were such that the interest rate authorized under the law of the lending bank's state exceeded the rate authorized under the law of the state where the loan was made; therefore, in that circumstance, the federal law applied. *Id.* The result would be no different under the Court's interpretation of DIDA.

**11.** "FDIA" and "DIDA" both refer to 12 U.S.C. § 1831d(a). *Discover Bank*, 489 F.3d at 605 n. 13.

In *Discover Bank*, the Fourth Circuit noted that the First Circuit, in *Greenwood Trust*, had compared the NBA and DIDA and found that "[t]he historical record" requires a court to read the parallel provisions of the DIDA and the NBA "in pari materia." *Discover Bank*, 489 F.3d at 605. As the *Discover Bank* court realized, however, the issue before the *Greenwood Trust* court was whether DIDA "*expressly*—not completely—preempted state usury laws," and therefore provided a defense to a usury claim. *Discover Bank*, 489 F.3d at 605; *see also Greenwood Trust Co.*, 971 F.2d at 829 (holding that when a state-chartered bank charges an interest rate that is authorized within its home state but exceeds the interest rate authorized under the law in the borrower's state, DIDA preempts the state law and serves as a defense to usury claims). Thus, Greenwood Trust is of little persuasive value in determining whether the complete preemption doctrine should apply to state-law usury claims. Furthermore, the Greenwood Trust court held only that state usury laws are preempted "[t]o the extent that a law or regulation enacted in the borrower's home state" proposes to restrict a bank's choice of interest rate to one lower than that allowed under DIDA. *Greenwood Trust Co.*, 971 F.2d at 827. This holding is in harmony with this Court's plain-language interpretation of § 1831d. Compare *id.* with § III.B.1., supra.

In *Discover Bank*, the Fourth Circuit also relied on the Third Circuit's opinion in *In re Community Bank of Northern Virginia* for the principle that the NBA and DIDA "are interpreted in para materia," and therefore the doctrine of complete preemption applies to DIDA, just as it does to the NBA. *See Discover Bank*, 489 F.3d at 605 (citing *In re Cmty. Bank of N. Va.*, 418 F.3d at 295). The Third Circuit's holding in *In re Community Bank*, however, relied on an overextension of the First Circuit's

*Greenwood Trust* holding, citing it for the assertion that "DIDA *completely* preempts any state law attempting to limit the amount of interest and fees a federally insured-state chartered bank can charge." *See In re Cmty. Bank of N. Va.*, 418 F.3d at 295 (emphasis added). *Greenwood Trust*, of course, held no such thing. *See Greenwood Trust Co.*, 971 F.2d at 826–27 (analyzing the use of DIDA as a defense to state-law usury claims). Moreover, the Third Circuit's assertion regarding DIDA's preemptive effect is dicta; in *In re Community Bank*, the Third Circuit found federal question jurisdiction based on the RICO and RESPA claims asserted in the amended complaint, rather than any preemptive effect DIDA may have had. *See In re Cmty. Bank of N. Va.*, 418 F.3d at 297–98.

### ii. Agency Opinion Regarding Preemption

■ Defendant also cites FDIC documents it contends show that § 1831d completely preempts state usury law. *See* Mem. Law. Opp. Mot. Remand at 16 (citing Br. Amicus Curiae FDIC at 13 *Discover Bank v. Vaden*, (No. 06–1221) (4th Cir. Feb. 9, 2007) (arguing for complete preemption); Interest Charges Under Section 27 of the Federal Deposit Insurance Act, 63 Fed. Reg. 19258, 19259 (Apr. 17, 1998) (relating the agency's interpretation of the term "interest")). However, no deference is due the FDIC's position on preemption. *See BankWest, Inc. v. Baker*, 411 F.3d 1289, 1300 (11th Cir.2005) (vacated for *en banc* consideration and later for mootness) (citing *Smiley v. Citibank (South Dakota)*, 517 U.S. 735, 744, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996); *Nat'l Mining Ass'n v. Sec'y of Labor*, 153 F.3d 1264, 1267 (11th Cir.1998); *Colo. Pub. Utils. Comm'n v. Harmon*, 951 F.2d 1571, 1579 (10th Cir. 1991) (observing that because "a preemption determination involves matters of

law—an area more within the expertise of the courts than within the expertise of [an administrative agency]," the courts need not defer to an agency's opinion regarding preemption)). Therefore, the FDIC's opinions may be considered only for their persuasive value.[12]

Accordingly, the Court does not find itself overwhelmed by the weight of contrary authority. Nor is the Court alone in its holding. In addition to the well-considered Eighth Circuit opinion discussed above, *Thomas v. U.S. Bank Nat'l Ass'n ND*, 575 F.3d 794 (8th Cir.2009) *(reh'g & reh'g en banc denied*, 575 F.3d 794 (8th Cir.2009)), *(cert. denied*, — U.S. —, 130 S.Ct. 3504, 177 L.Ed.2d 1091 (2010)), a number of other district courts have arrived at the same conclusion the Court reaches today, *see, e.g., Saxton v. Capital One Bank*, 392 F.Supp.2d 772, 782–83 (S.D.Miss.2005) (holding that § 1831d does not completely preempt state causes of action against state-chartered banks); *Dubose v. Merchants & Farmers Bank*, No. Civ.A. 3:01–CV–201WS, 2006 WL 568714, at *2 (S.D.Miss. Mar. 6, 2006) (same). Indeed, holding that DIDA does not completely preempt state usury claims is consistent with the only on-point opinion issued by a court in this circuit. *See Partin v. Cableview, Inc.*, 948 F.Supp. 1046, 1049 (S.D.Ala.1996) (holding that "DIDA does not completely preempt state law; a plaintiff may prosecute a claim arising under DIDA in state court without fear of removal"). For all of these reasons, the Court finds Defendant's authority to carry little weight.

### 4. Conclusion

The Court finds that DIDA does not completely preempt state usury law. Consequently, DIDA provides no grounds for federal question jurisdiction or removal to federal court. Plaintiffs' motion to remand is therefore due to be granted, and the Court will not reach Defendant's motion to dismiss.

### C. Request for Attorneys' Fees

■ Plaintiff has requested an award of attorneys' fees for the costs incurred as a result of the improper removal. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Whether attorneys' fees will be awarded is solely up to the discretion of the trial court. *Graham Commercial Realty, Inc. v. Shamsi*, 75 F.Supp.2d 1371, 1373 (N.D.Ga.1998) (noting further that the court need not find bad faith or improper purpose in order to award fees).

■ The standard for awarding fees, however, "turns on the reasonableness of the removal," and generally a court may award attorneys' fees pursuant to § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Conversely, a court should deny fees when there is an objectively reasonable basis for seeking removal. *Id.* Preemption law is far from settled, particularly in this circuit and with regard to DIDA. Furthermore, although the Court disagrees with the opinions in which the Third and Fourth Circuit held that DIDA completely preempts state usury law, it also finds that those opinions provided Defendant with a reasonable basis for seeking removal of this case. The Court therefore denies Plaintiffs' request for an award of attorneys' fees.

---

**12.** Again, because the FDIC opinion of general counsel does not contemplate federal preemption of state law, even its persuasive value is minimal.

## IV. Summary

The Court **GRANTS** the Motion to Remand [Doc. 14] and **DENIES as moot** Plaintiffs' Motion to Expedite Ruling [Doc. 24]. Because the Court lacks jurisdiction over the matter, Defendant's Motion to Dismiss is **DENIED as moot** [Doc. 21]. The Court also **DENIES** Plaintiffs' request for attorneys' fees [Doc. 14]. The Clerk is **DIRECTED** to **REMAND** the case to the Superior Court of Gwinnett County, Georgia.